**IN THE UNITED STATES DISTRICT COURT FOR THE OF COLUMBIA**

| | |
|---|---|
| GABRIELLE THOR FERNANDO DAVIS<br>990 Pacific Hills Point, E307<br>Colorado Springs, CO 80906<br><br>　　*Plaintiff*,<br><br>　　v.<br><br>THE CONGRESSIONAL BLACK CAUCUS<br>FOUNDATION, INC.<br>1720 Massachusetts Avenue, NW<br>Washington, D.C. 20036<br><br>Serve: Tonya Veasey<br>　　　　1720 Massachusetts Avenue, NW<br>　　　　Washington, D.C. 20036<br><br>　　*Defendant*. | Civil Case No.: 20-3488 |

**COMPLAINT**

Plaintiff, Gabrielle Thor Fernando Davis, hereby brings suit against her former employer, the Congressional Black Caucus Foundation, Inc. ("CBCF"), for violations of the Families First Coronavirus Response Act, 29 U.S.C. 2601, *et seq.* ("FFCRA"), the District of Columbia Payment and Collection of Wages Law, DC Code §§ 32-1301 *et. seq.* ("DCPCWL") and the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et. seq.* ("DCMWRA"). Plaintiff alleges as follows:

**PARTIES**

1.　　Plaintiff is an adult resident of the state of Colorado. She began her employment with CBCF part-time as of July 2019. In approximately December 2019, CBCF promoted her to the position of Program Coordinator, Scholarships and Spouses. She was employed by CBCF in this capacity from December, 2019 to the date of her termination on or about August 3, 2020.

1

While employed as a Program Coordinator, CBCF incorrectly classified Plaintiff as exempt from the DCMWRA and paid her a salary of $1,923.08 per pay period ($50,000.00 annually).

2. Plaintiff was an employee of CBCF within the meaning of the DCPCWL and the DCMWRA, based on the statutory definitions of "employee." Also, at all times relevant to the Complaint, Plaintiff was employed in the District of Columbia within the meaning of D.C. Code § 32-1003 (b), because during that time-frame, she regularly spent more than 50% of her working time in the District of Columbia and/or because her employment was based in the District of Columbia and she regularly spent a substantial amount of her working time in the District of Columbia and not more than 50% of that time in any particular state. *Id*.

3. CBCF is a non-profit organization. Its headquarters are located in the District of Columbia and it is registered to do business in the District of Columbia as a non-profit entity. CBCF was an "employer" of the Plaintiff within the meaning of the DCPCWL and the DCMWRA until her termination on August 3, 2020, because it hired her, it terminated her, it set the terms and conditions of her compensation, it directed her in her work and it maintained her employment records.

**JURISDICTION**

4. Plaintiff is asserting causes of action under the FFCRA, the DCPCWL and the DCMRWA.

5. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiff's District of Columbia claims under 28 U.S.C. § 1367.

6. This Court has *in personam* jurisdiction over the CBCF because it conducts business in the District of Columbia and/or because a substantial part of the events giving rise to these claims occurred in the District of Columbia.

## STATEMENT OF FACTS

7. As of February 15, 2015, every employer in the District was required to specify in writing (at the time of hire and within 30 days of any change), the precise elements of an employee's compensation (including leave benefits). D.C. Code § 32-1008 (c) and (d).

8. As of the date Plaintiff became a Program Coordinator in or around December, 2019, Plaintiff's biweekly wages were $1,923.08. Assuming a 40-hour work week, this was $24.04 per hour.

9. CBCF did specify the terms of Plaintiff's compensation including leave benefits in writing by placing them in its own Personnel Manual. As part of her employment compensation package which CBCA promised Plaintiff, from July 2019, until she was promoted to Program Coordinator, Plaintiff earned leave benefits at the following rates: 3 hours of annual leave per pay period and 3 hours of sick leave per pay period. After Plaintiff became a full-time Program Coordinator in or around January 2, 2020, CBCF promised Plaintiff that she could accrue sick and annual leave at the rate of four hours per pay period. CBCF also promised employees, including Plaintiff, that they would continue to accrue sick and annual leave when they are absent from work, as long as they were in paid-leave status. During the course of Plaintiff's employment with CBCF, she accrued approximately 100 hours of sick leave and 100 hours of annual leave. However, according to the leave and earnings summary which CBCF provided to Plaintiff, CBCF only paid Plaintiff for 42 out of 100 hours of her accrued annual leave, leaving 58 hours of accrued but unused annual leave unpaid (a value of $1,396.64).

3

10. CBCF appears not to have properly credited Plaintiff with her annual and potentially sick leave accruals. By its own written documents, CBCF promised to allow Plaintiff to accrue sick and annual during times when she was not working, but was on paid leave status. But, from at least May 18 through June 23, while Plaintiff was not working, but in paid-leave status, CBCF did not allow Plaintiff to earn annual or sick leave during this period, in violation of its own written policies and long-standing practices.

11. Also, CBCF promised Plaintiff that she would be paid for certain holidays (which CBCF specified), where employees of CBCF, including Plaintiff, were not required to work. CBCF promised to pay Plaintiff for the following 12 holidays, which occurred during the course of her employment: New-Years Day (January 1, 2020); Martin Luther King Day (January 15, 2020); President's Day (February 15, 2020); Memorial Day (May 25, 2020); Independence Day (July 4, 2019 and July 4, 2020); Labor Day (September 2, 2019); Columbus Day (October 14, 2019); Veterans Day (November 11, 2019); Thanksgiving and the Friday following (November 28 and 29, 2019); Christmas Day (December 25, 2019). However, during the time Plaintiff was part time (until approximately January 2, 2020), she was paid for only 6 out of 8 hours of a holiday. After becoming a full-time employee on or about January 2, 2020, CBCF agreed to pay Plaintiff for the full eight hours of each designated holiday. While employed part-time, Plaintiff should have (and appears to have) been paid for 8 holidays (6 hours for each one), a total of 48 hours of holiday time. After becoming employed full-time, Plaintiff should have been paid for an additional four holidays at 8 hours per holiday or a total of 32 hours of holiday time. But CBCF only paid Plaintiff for 53.5of the 70 hours of holiday time she was owed, a shortfall of essentially two days or 16.5 hours (a value of $397.32).

12.     During some portion of her employment with the CBCF, Plaintiff worked overtime hours, based on her workload. And, although Plaintiff was classified by the CBCF as exempt, she did not perform, as a primary duty, functions which would have rendered her exempt.

13.     During one week in January 2020, Plaintiff worked approximately two hours of overtime (a value of approximately $22.00) and reported her overtime hours in the electronic time-keeping system. After doing so, CBCF's Chief Financial Officer ("CFO") instructed Plaintiff not to report more than 40 hours of work in a single work week on her time card, even if she worked more than 40 hours. At no time did the CFO tell her not to work overtime hours, just not to report them. Subsequently, when Plaintiff worked overtime because her workload required it, she did not report her overtime hours because she feared being disciplined.

14.     In or around the beginning or mid-March, 2020, CBCF directed its employees to work virtually from home, so that they would reduce the risk of contracting COVID 19. Before working virtually, with the exception of the week in January, 2020, which is mentioned above, Plaintiff did not work more than 40 hours per week. In March, a number of employees left CBCF, and the Plaintiff's work load significantly increased. Consequently, during this time, CBCF demanded significantly more work from Plaintiff and she could not complete the work within the 40-hour per week time frame. So, during the last three weeks in March, all of April and the first two weeks of May, Plaintiff worked more than 40 hours per week, just to keep up with the workload. That is a total of 9 weeks. And, Plaintiff's supervisor, the CFO and the Chief Executive Officer of CBCF were all fully aware that Plaintiff was working overtime hours and none of them instructed her to refrain from doing so. Plaintiff estimates that she worked an average of approximately 10 hours per week of overtime during the nine-week period. The

estimated value of March-May overtime pay along with the January overtime pay is $887.35.

15.     As of March of 2020, Plaintiff had two young children, one who is in school and the other in day care. In that month, both the school and daycare center which her children attended were closed due to the COVID-19 pandemic. At the time Plaintiff was unaware of her right to receive FFCRA benefits, including paid Family Leave to care for her children, as CBCF had not provided her with notice of the benefits, as it was required to do under the FFCRA.

16.     On May 18, 2020, Plaintiff began to experience symptoms of COVID-19. She sought medical attention and received a COVID test on May 18 and May 22 and her doctor advised her to quarantine until June 2, 2020. On or about May 18, Plaintiff informed CBCF of these facts and CBCF approved her to be off of work. Originally, CBCF debited 40 hours of Plaintiff's sick leave for the week of May 18-May 22.

17.     Subsequently, Plaintiff learned about her right to receive FFCRA benefits and formally requested (from CBCF) paid sick leave for two reasons: (1) for COVID-related absence; and (2) to care for her children, since their day care and school was closed.  For this two-week period, CBCF approved the request and provided Plaintiff with paid sick leave benefits pursuant to the "Emergency Paid Sick Leave Act", which was part of the FFCRA. Presumably, CBCF recredited the sick leave it had improperly debited for the week of May 18-May 22, but it is not completely clear.

18.     Plaintiff was not able to return to work on Tuesday, June 2, 2020, because her children's day care and school continued to be closed due to COVID-19. So, Plaintiff remained on paid leave under the FFCRA (29 U.S.C. § 2620), for an additional three weeks and two days (through June 23, 2020). On June 11, 2020, CBCF formally approved Plaintiff's leave from May 18 through June 23, 2020 and informed her that she would receive FFCRA benefits for this

entire period (May 18 through June 23, 2020). The memorandum specified that Plaintiff would receive Emergency Paid Sick Leave (under the FFCRA) for 80 hours at 100% of her salary for her absence from Monday, May 18 through Monday, June 1, 2020.  And, the memorandum also specified that from Tuesday, June 2 through June 23, 2020, she would receive Emergency Paid Family Leave (under the FFCRA) at two-thirds of per pay and that CBCF would make up the remainder of leave-pay by allowing her to debit vacation hours at the rate of 2.67 hours per day. The memorandum said nothing about debiting available sick leave hours, even though Plaintiff did or should have had available sick leave.

19. It appears that CBCF did not award Plaintiff Emergency Paid Sick Leave for the entire 11 work-day period beginning May 18 and ending June 1, 2020, as it promised.

20. In addition, CBCF failed to provide Plaintiff with the required Emergency Paid Family Leave benefits for the remaining family leave period (June 2 through June 23). CBCF paid Plaintiff for all of her hours during the first 10 work days of the 17-day leave period -- June 1 to June 5, 2020 (40 hours) and for June 8-12, 2020 (40 hours). However, Plaintiff's payroll records did not reflect the debiting of any leave during this two-week period and it is not clear why. But that is not the only problem. CBCF did not provide Plaintiff with the Emergency Paid Family Leave benefits for the seven additional days that remained in the Family Leave period (Monday June 15 to June 23, 2020).

21. Instead, according to the payroll records, CBCF debited Plaintiff's leave for that period and only paid her for the debited leave and did not provide any Emergency Paid Family Leave benefits. For the week of June 15-19, 2020, CBCF debited Plaintiff for 28.65 hours of annual leave and paid her only for those 28.65 hours. It should have paid Plaintiff the gross sum of $641.00 as Family Leave Benefits and only debited 13.35 hours of annual leave. As for the

7

final two-days of the Emergency Paid Family Leave period, CBCF debited 16 hours of sick leave. Whereas, CBCF should have paid Plaintiff $256.17 in Family Leave Benefits and should only have debited only 5.34 hours of Plaintiff's sick leave.

22. If her annual leave had been computed correctly, she would have had a higher balance of accrued by unused leave after her termination on August 3, 2020. And, CBCF violated the law by failing to pay her for the remaining balance of her annual leave following her termination. In addition, CBCF underpaid Plaintiff for certain periods of time because it erroneously determined that Plaintiff has no remaining sick leave balance, when in fact that was not the case. These were unpaid wages because they were part of Plaintiff's compensation package.

23. In addition, because CBCF did not allow Plaintiff to earn sick leave from May 18 through June 23, 2020 (she would have earned). Plaintiff was originally scheduled to return to work on June 24, 2020, but needed to care for her older child who was out of school and Plaintiff requested and received leave ALWOP for June 24, and 25, but Suana Watson (CBCF's HR Consultant) stated in an email that she needed return to work on June 26, 2020, or it would be considered job abandonment.

24. Plaintiff did not return to work on June 26, 2020 due to a serious health condition. On June 25, Plaintiff because extremely ill and was in the hospital receiving in-patient care on June 25-27. The next week Plaintiff recovered at home and was able to return to work on Monday, July 6, 2020. Essentially Plaintiff was out sick from June 24-26 and June 29-July 3. When Plaintiff did not return to work on June 26, 2020 (because she was in the hospital), CBCF terminated her employment. However, on July 1, 2020, CBCF rescinded the termination and restored Plaintiff's employment status retroactive to June 26, 2020. CBCF then excused

Plaintiff's absence through July 3, 2020 and directed her to return to work on July 6, 2020, which she did.

25. Aside from debiting Plaintiff's sick leave on June 21, 22 and 23, CBCF placed her on ALWOP for a brief period of time, because CBCF concluded erroneously that Plaintiff has exhausted annual leave and all sick leave, or that she was ineligible to use this leave for that time period. Plaintiff should also have been paid for the July 3, 2020 holiday, because she was on paid-leave.

26. Plaintiff's FFCRA benefits, sick leave benefits, holiday pay, overtime compensation and the lump sum equivalent of her accrued but unused annual leave (at the time of termination) are wages within the meaning of D.C. Code § 32-1301 (3) because they constitute: "all monetary compensation after lawful deductions, owed by [CBCF] . . . whether the amount is determined on a time, task, piece, commission or other basis of calculation." *Id.* And, specifically, the FFCRA and leave benefits are "Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; or (iii) Pursuant to District or Federal Law."

## COUNT I
## VIOLATIONS OF THE FFCRA

27. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

28. Plaintiff was an eligible employee within the meaning of the FFCRA because she was employed by FFCRA for more than 30 calendar days, when she became eligible for FFCRA paid sick leave and other paid leave.

29. The CBCF is a covered employer under the FFCRA (29 U.S.C. §§ 2611 (4)(a)(i) and 2620 (A)(1)(b) because, at all relevant times CBCF was engaged in commerce and it had

less than 500 employees. CBCF engaged in commerce within the meaning of § 2611(4)(A)(i) because it had employees, who singularly or collectively, on a routine basis throughout their work day who, sent and received emails, texts or other electronic communications to and from persons who were located outside of the District of Columbia, they had landline or cellular telephone calls or virtual communication with persons or entities that were located outside of the District of Columbia and/or they sent or received written communications or parcels sent through the United States Mail or by private mail carrier to or from persons that were located outside the District of Columbia.

30. CBCF violated the FFCRA in the manner described above in paragraphs 15 through 26. That violation is considered a failure to pay minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 206, and is subject to the penalties set forth in 29 U.S.C. § 216.

31. CBCF is liable to Plaintiff under the FFCRA, for her for underpayment of FFCRA benefits, plus an additional equal amount as liquidated damages, court costs and reasonable attorneys' fees calculated at Legal Services Index LSI Matrix ("LSI Laffey Matrix") rates, *see D.L v. District of Columbia*, 924 F.3d 585, 593-94 (D.C. Cir. 2019).

32. The precise amount owed to the Plaintiff cannot be calculated at this time without discovery because Plaintiff and her counsel do not possess all electronic records that would be needed to estimate the damages.

## COUNT II
## VIOLATIONS OF THE DCMWRA

33. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

34. At all times relevant to the Complaint, Plaintiff was and "employee" of the CBCF within the meaning of D.C. Code § 32-1002 (2).

35. At all times relevant to the Complaint, CBCF was an "employer" of Plaintiff within the meaning of D.C. Code § 32-1002 (3).

36. CBCF violated the DCMWRA by misclassifying Plaintiff as exempt and failing to pay her an overtime premium for the overtime hours she worked in January 2020 and for a 9-week period from mid-March through May 17, 2020. Plaintiff estimates that she worked two hours of overtime in January, 2020 and 10 hours of overtime per week during March through May time frame.

37. Plaintiff was paid hourly and her regular rate of pay was $24.04 per hour.

38. As a result of the violations of the DCMWRA by the CBCF, it is liable for Plaintiff's unpaid overtime premium, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the LSI Laffey Matrix rate, as required by D.C. Code § 32-1308 (b)(1).

39. The precise amount owed to the Plaintiff cannot be calculated at this time without discovery because Plaintiff and her counsel do not possess all electronic regards that would be needed to estimate the number of hours of overtime, including but not limited to Plaintiff's electronic calendar, email, other electronic correspondence and travel records.

## COUNT III
## VIOLATIONS OF THE DCPCWL

40. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

41. At all relevant times, CBCF was an "employer" of Plaintiff within the meaning of the DCPCWL.

42. At all relevant times, Plaintiff was an "employee" of CBCF within the meaning of the DCPCWL.

43. At all relevant times, FFCRA benefits, her unpaid accrued but unused annual leave and the sick time or family leave time for which she was not permitted to use sick leave, were "wages" within the meaning of the DCPCWL, as they are "Other remuneration promised or owed: "(iii) Pursuant to District or Federal Law."

44. CBCF discharged Plaintiff on August 3, 2020. At that time, CBCF owed Plaintiff money for FFCRA benefits, for its failure to allow Plaintiff to use available sick leave for family or sick leave and for its failure to pay Plaintiff a lump sum for her actual accrued but unused annual leave and personal days.

45. As a result of the violations of the DCPCWL by the CBCF, it is liable for liquidated damages in the amount of three times the amount of the unpaid wages along with reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the LSI Laffey Matrix rate, as required by D.C. Code § 32-1308 (b)(1).

**RELIEF REQUESTED**

This Court should enter judgment for Plaintiff and against the CBCF in the amounts specified below:

a. Count I: enter a judgment against CBCF and in favor of Plaintiff, based on its violations of the FFCRA, in the amount of Plaintiff's unpaid FFCRA benefits, plus an amount equal to those benefits as liquidated damages;

b. Count II: enter a judgment against CBCF and in favor of Plaintiff, based on its violations of the DCMWRA, in the amount of Plaintiff's unpaid overtime wages, plus an amount equal to three times her unpaid overtime wages as liquidated damages;

c. Count III: enter judgment against the CBCF and in favor of Plaintiff under the DCPCWL for the amount of her FFCRA benefits, the value of her accrued but unused annual the time of her termination, any periods when Plaintiff was placed on leave without pay status (but could have used sick leave), plus an additional amount equal to three times the amount of the unpaid wages, as liquidated damages;

d. All Counts: award reasonable attorneys' fees and costs incurred in this action, including fees at the LSI Laffey Matrix rate.

Respectfully submitted,


/s/Omar Vincent Melehy
Omar Vincent Melehy
DC Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone: (301) 587-6364
Fax:    (301) 587-6308
*Attorneys for Plaintiff*

14